PDK/FRAUD: USAO 2025R00316



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| UNITED STATES OF AMERICA | * | |
|---|---|---|
| | * | |
| v. | * | CRIMINAL NO. PX-25-174 |
| | * | |
| APPRIO, INC., | * | (Conspiracy to Commit Bribery of a |
| | * | Public Official, 18 U.S.C. § 371; |
| Defendant | * | Securities Fraud, 15 U.S.C. §§ 78j(b), |
| | * | 78ff, 17 C.F.R. § 240.10b-5; |
| | * | Forfeiture, 18 U.S.C. § 981(a)(1)(C), |
| | * | 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c)) |
| | * | |

******

## INFORMATION

The United States of America charges that:

### Relevant Individuals and Entities

At all times relevant to this Information, with all dates being approximate and inclusive:

1. The defendant, **APPRIO, INC.** ("**APPRIO**"), was a federal contractor headquartered in Washington, D.C. that provided services involving technology solutions and program management to government agencies, including the United States Agency for International Development ("USAID").

2. Darryl Britt ("Britt"), a Florida resident, was the president of **APPRIO**. In executing the bribery scheme and securities fraud schemes described below, Britt, at all times, acted as an agent within the scope of his employment with **APPRIO** and with intent to benefit **APPRIO**.

3. Roderick Watson ("Watson"), a Maryland resident, was a contracting officer at USAID from in or around 2009 through in or around 2023. As such, Watson was a public official under 18 U.S.C. § 201(a)(1).

4. Walter Barnes ("Barnes"), a Maryland resident, was the founder, owner, and president of PMCG Consulting Group LLC doing business as Vistant ("Vistant"), which was headquartered in Towson, Maryland. Vistant provided consulting and other services to government agencies, including USAID.

5. Paul Young ("Young"), a Maryland resident, was the president of Company 1, which was headquartered in Fulton, Maryland, and contracted with United States government agencies to provide Information Technology services.

6. Company 2 was a private equity company based in San Diego, California.

## COUNT ONE
### (Conspiracy to Commit Bribery of a Public Official)

7. Paragraphs 1 through 6 of this Information are alleged and incorporated by reference as if set out in full.

8. Between in and around 2013 and in and around 2023, in the District of Maryland and elsewhere, the defendant,

**APPRIO, INC.,**

did knowingly combine, conspire, confederate, and agree with Britt, Watson, Barnes, Young, and others known and unknown, to commit an offense against the United States, namely, bribery of a public official, that is, to corruptly give a thing of value to a public official with intent to influence an official act, in violation of 18 U.S.C. § 201(b)(1)(A).

### Object of the Conspiracy

9. The object of the conspiracy was for **APPRIO**, Britt, and their co-conspirators to: (a) unjustly enrich themselves by providing money and other things of value to Watson, a public official, in return for Watson being influenced to help secure USAID contracts; and (b) to conceal the conspiracy and the co-conspirators' overt acts in furtherance of the conspiracy.

## Manner and Means

10. It was part of the conspiracy that **APPRIO**, Britt, and their co-conspirators bribed Watson repeatedly—through multiple payments and other things of value, gifts, and favors—in exchange for Watson agreeing to influence the award of USAID contracts valued at hundreds of millions of dollars to **APPRIO** and Vistant.

11. It was part of the conspiracy that **APPRIO** and Britt obtained and retained government contracts with USAID, including prime contracts through **APPRIO**, and at least two subcontracts through Vistant.

12. The conspiracy involved at least fourteen USAID prime contracts, valued at approximately $552.5 million, that were awarded or solicited in exchange for bribes, including:

    a. between in and around 2013 and in and around 2015, the award of four contracts to **APPRIO** valued at approximately $54.7 million; and

    b. between in and around 2018 and in and around 2022, the award of seven contracts to Vistant, and bids on three additional contracts, valued at approximately $497.8 million.

13. Throughout the conspiracy, **APPRIO**, Britt, and their co-conspirators regularly paid various bribes to Watson including cash, iPhones, laptops, thousands of dollars in tickets to a suite at an NBA game, a country club wedding, downpayments on two residential mortgages, cashier checks to pay off debt, which included a vacation at Martha's Vineyard, as well as intangible benefits like jobs for relatives. Ultimately, **APPRIO**, Britt, and their co-conspirators paid Watson numerous bribes collectively valued at more than $1 million.

## Overt Acts

14. In furtherance of the conspiracy, and to effect the object of the conspiracy, the

following overt acts, among others, were committed in the District of Maryland and elsewhere:

  a. On or about June 6, 2014, Watson texted Young, "I had a long talk with [Britt] today … We need to talk about the potential money losses you are incurring and the fact you're not filthy rich[.]" Young replied, "I could/would be making a lot of money." Watson replied, "[T]he fact I have to ask you for money for BS stuff bothers the hell out of me ... Like I'm not smart enough to make millions for sourcing contracts[.]" Young replied, "Believe me time will come." Watson replied that with "mounting debt I almost asked [Britt] for a loan .... Or advance[.]"

  b. On or around August 8, 2014, a few weeks before **APPRIO** was awarded its second USAID contract, Britt discussed with Young ways to conceal bribe payments to Watson. Britt texted Young, "[I]f possible, give it to some other third party to give him. That way you can honestly say you never gave him anything … never give anything but cash to you know who."

  c. On or about August 19, 2015, Britt texted Young about hiring Watson's relative: "I like him a lot. Time for you to hire him!!! I can't because of [Watson]. But I'm going to get him employed by one of my colleagues with these good companies that are our size." Instead of Britt arranging to have Young hire Watson's relative, Britt ultimately arranged for Barnes and Vistant, which was a subcontractor to **APPRIO**, to hire Watson's relative.

  d. On or about October 2, 2015, Britt sent a text message to Young concerning how to conceal the source of funds for Young to purchase a laptop computer for Watson on behalf of Britt, stating, "You know you can bill me an 'administrative fee'. How much was it?" After Young replied that it was $2,000, Britt stated, "Let's talk today about your next invoice to me."

e.  In and around early 2017, Britt and Barnes formed a joint venture between **APPRIO** and Vistant to bid on a USAID contract.

f.  On or about April 13, 2017, at Britt's direction, an **APPRIO** employee emailed Young, copying Britt, requesting permission to request a facility security clearance for Vistant as a subcontractor for **APPRIO**. Watson approved the request. During this period, Britt continued to make bribe payments to Watson through Young, including a $17,000 payment to make a downpayment on a mortgage in or around July 2017.

g.  On or about September 27, 2017, Britt emailed Barnes about an upcoming meeting with Watson. Barnes asked Britt, "What is this meeting regarding?" Britt responded, "A one on one introduction to [Watson]. Wants to know you re: upcoming opportunities. Introduce you to the family :)".

h.  On or about October 31, 2019, Watson texted a Vice President at **APPRIO** to arrange to meet in person to obtain a cash bribe payment.

i.  On or about January 2, 2020, Barnes texted Young, "Has [**APPRIO**] paid you yet?" The next day, Barnes texted Young, "Did [**APPRIO**] get back to you?" On January 7, 2020, Barnes texted Young, "Did [**APPRIO**] pay you?" Young replied, "[I'm] on the phone with [Britt]." Around that time, Young exchanged text messages with Britt about having an **APPRIO** Vice President send payments to Watson through Young. Britt texted Young, "6500," and, "I thought it was 4000. [**APPRIO's** Vice President] told me that number." Young replied, "Done[.]" Britt stated, "I gave you the wrong number. It's worse," and "7500[.]" Young replied, "[W]ill redo[.]" Financial records show that Young funneled monthly bribe payments to Watson that increased around this time from $4,000 to $7,500.

j.      On or about July 20, 2020, Watson, in exchange for bribe payments, influenced the award of a USAID contract to Vistant for which **APPRIO** served as a subcontractor.

18 U.S.C. § 371.

## COUNT TWO
### (Securities Fraud)

15. Paragraphs 1 through 6 and Paragraphs 9 through 14 of this Information are alleged and incorporated by reference as if set out in full.

16. From at least in or around November 1, 2023, through at least in or around November 16, 2023, in the District of Maryland, and elsewhere, defendant,

**APPRIO, INC.**

did knowingly and willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and facilities of national securities exchanges, in connection with the purchase and sale of securities, use and employ, and cause others to use and employ, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by making, and causing others to make, untrue statements of material fact and omitting to state, and causing others to omit to state, material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, to wit, materially misrepresenting to Company 2 that **APPRIO** was in compliance with all laws when, in fact, **APPRIO** had been engaging a bribery scheme to obtain USAID contracts.

15 U.S.C. §§ 78j(b) and 78ff
17 C.F.R. § 240.10b-5

## FORFEITURE ALLEGATION

The United States of America further alleges that:

17. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c) in the event of the defendant's conviction under Count One or Count Two of this Information.

18. Upon conviction of the offenses alleged in Count One or Count Two of this Information, the defendant,

**APPRIO, INC.,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

### Substitute Assets

19. If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)


Date: 6/11/25

/s/ Lorinda Laryea
Lorinda I. Laryea
Acting Chief
United States Department of Justice
Criminal Division, Fraud Section


Date: 6/4/25

Kelly O. Hayes /PDK
Kelly O. Hayes
United States Attorney